# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | |
|---|---|
| APRIL WINDHAM, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 9:18-cv-00077 |
| v. § | |
| § | |
| EXPRESS SERVICES, INC. and § | |
| ATKINSON CANDY COMPANY, § | |
| § | JURY DEMANDED |
| Defendants. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

COMES NOW, April Windham ("Plaintiff" and "Windham" throughout), and brings this action against Express Services, Inc. and Atkinson Candy Company ("Defendants" throughout) for violations of Title VII of the Civil Rights Act of 1964. In support of such claims, Windham would show as follows:

### I. JURISDICTION

1. This action arises under Title VII of the Civil Rights Act of 1964 (42 U.S. Code §§ 12101 et seq.).

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1337.

### II. PARTIES

3. Plaintiff April Windham is a citizen of the United States and resides in Angelina County, Texas. She is a female.

4. Defendant Express Services, Inc. is a foreign for-profit corporation, registered in and doing business in the state of Texas. Relevant to this suit, Express Services, Inc. does business under the assumed name Express Employment Professionals. Express Services, Inc. may be

served with summons through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

5. Defendant Atkinson Candy Company is a domestic for-profit corporation, registered in and doing business in the state of Texas. Atkinson Candy Company may be served with summons through its registered agent, Amy Voltz, 1608 Frank Avenue, Lufkin, Texas 75904.

6. For the entire year 2017, Atkinson Candy Company was an "employer" pursuant to 42 U.S. Code § 2000e(b).

7. For the entire year 2017, Express Services, Inc. was an "employer" pursuant to 42 U.S. Code § 2000e(b).

8. During her assignment at Atkinson Candy Company, Windham was an "employee" of Express Services, Inc., pursuant to 42 U.S.C. § 2000e(f).

9. During her assignment at Atkinson Candy Company, Windham was an "employee" of Atkinson Candy Company, pursuant to 42 U.S.C. § 2000e(f).

10. In the 2017 calendar year, Express Services, Inc. had more than 500 employees for at least 20 weeks of that year.

11. In the 2017 calendar year, Atkinson Candy Company had at least more than 200 employees for at least 20 weeks of that year.

### III. STATEMENT OF FACTS

12. On or about August 28, 2017, Windham began a temporary-to-permanent position as a quality assurance inspector at Atkinson Candy Company ("Atkinson Candy," throughout) in Lufkin.

13. She was placed in the position through the staffing service Express Employment Professionals, which is an assumed name of defendant Express Services, Inc. ("Express," throughout).

14. Express handled Atkinson's payroll and coordinated her assignment while Atkinson Candy directly supervised Windham on a day-to-day basis. Express had also placed other employees with Atkinson.

15. Frank Moko (male), Quality Assurance Manager, was a supervisor of Windham and was directly employed by Atkinson Candy. In Windham's first week, Moko asked Windham to go to dinner with him and pressured her to do so. After daily requests, Windham relented due to the fact that he was her supervisor, and she wanted this job position to work out. However, she got Moko to confirm, verbally, that they would go to dinner as work colleagues only .

16. On or about September 1, the two went to dinner after work. After dinner, Windham got the impression that Moko wanted to engage in a romantic relationship with her, based on his comments and behavior. Windham told him at that time that she doesn't like "people in my bubble," as a polite way to get her new supervisor to give her space and stop making advances on her.

17. Over the next two weeks, Moko engaged in physically inappropriate advances toward, and touching of, Windham at the work site.

18. On one occasion, Windham had spilled coffee on the chest area of her shirt. Moko went up to her and starting touching her chest, under the guise of touching the stain. Windham backed away, startled and confused.

19. On another occasion, Windham was wearing a high V-neck t-shirt that was just translucent enough to show that she had some sort of tattoo beneath the shirt on her chest. Moko

pulled the collar on her shirt and looked down her shirt, under the guise of looking at her tattoo. Windham again pulled back in disgust.

20. On September 13, 2017, Windham had arrived to work and was putting on her lab smock. Moko was there, and the two of them were alone while she was donning her protective clothing. Moko asked Windham about a lab coat he had given her to wear, and Windham told him that it was too large for her. Moko then came behind her, asked her "what about this coat?" as he wrapped his arms around her and slid his hand up the side of her shirt. Shocked and disgusted, Windham pulled away and went to her workstation feeling terrible. A bit later that morning, Windham told Moko that she had forgotten to pay her water bill, as a way to leave the worksite under the circumstances. Moko refused to let her leave.

21. Just prior to lunch, Moko asked her if something was wrong, to which she responded that she doesn't like to be touched like that. He apologized and said he wouldn't do it again.

22. On her lunch break, Windham drove to Express's Lufkin office and told Kim Brown, a Recruiting Specialist there, about what had happened to her with Moko at Atkinson Candy. Brown showed immediate disgust, and said "we cannot do this anymore" - suggesting that Express was already aware of Moko treating prior female employees this way. She had Windham write a statement about the events. When Windham asked her if this had happened before, Brown replied cryptically that there had been "rumors." Brown told Windham that Express was her employer, for Windham not to go back up there that day, and that Express would handle the situation. Windham went home.

23. Later that day, Windham's father went up to Atkinson Candy and told the Human Resources Director Ashley Hopsin, as well as Moko's boss, Director of Manufacturing Doug Hanks, about what had been happening to his daughter at the hands of Moko.

24.     That evening, the owner of the Express location in Lufkin, Diane King, called Windham to talk to her. King tried to discourage Windham from reporting the assault to law enforcement. She also told Windham that she should continue working at Atkinson Candy, and Express was not going to interfere with her going back to work.

25.     On the following morning, which was September 14, 2017, Windham went to work, when Moko had not yet arrived. As soon as Ashley Hopsin arrived to work, Windham went to speak with her. Hopsin had Windham write a statement. Afterward, they discussed the matter, and Windham told Hopsin that she was concerned about retaliation because there were no cameras in the lab to provide security if Moko were alone again with Windham. However, Windham told Hopsin that otherwise, she loves her job. Hopsin responded that she had heard exceptional feedback from various employees about Windham's work ethic. Hopsin had Windham go home so that the company could investigate.

26.     By the day after Windham and Hopsin had met to discuss Moko's conduct, Atkinson Candy made the decision to terminate Windham's assignment at Atkinson Candy.

27.     Atkinson Candy terminated Windham's assignment, in part, because Moko denied Windham's allegations.

28.     When Moko denied Windham's allegations, Atkinson Candy believed him.

29.     On September 15, 2017, Brown called Windham and told her that Atkinson Candy had terminated Windham from the assignment. Brown didn't say why.

30.     Windham continued to contact Express for another job assignment, and for six weeks following this incident, Express was unresponsive. It was at that point that Windham gave up on any reliance on Express to find her another job, and took a job that she had located elsewhere.

Upon information and belief, Express intentionally chose not to make reasonable efforts to find Windham another position because of what had occurred with Windham at Atkinson Candy.

## IV. FIRST CAUSE OF ACTION – SEX DISCRIMINATION

31. By the allegations described above, Defendants discriminated against Windham on the basis of her sex, female, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S. Code § 12101 et seq.). Defendants violated Windham's rights by subjecting her to a hostile work environment based on sex, and by discriminating against her based on her sex. Furthermore, Defendants knew that Moko had previously discriminated against one or more female workers at Atkinson Candy, based on sex, and knew that such discrimination was unlawful. Defendants violations justify an award of damages, including economic damages, the equitable relief of reinstatement or front pay in lieu of reinstatement, compensatory and noncompensatory damages, exemplary damages, attorney fees, court costs, pre- and post-judgment interest, and any relief to which Windham may be entitled.

## V. SECOND CAUSE OF ACTION – RETALITION

32. By the allegations described above, Defendants unlawfully discriminated against Windham, in violation of 42 U.S. Code § 2000e–3(a). Atkinson Candy unlawfully discriminated against her when it terminated her following her report about Moko. Express unlawfully discriminated against Windham when it refused to engage in customary efforts to place Windham in another job position. Defendants knew that such respective conduct was in violation of federal law when each Defendant engaged in such conduct. Defendants violations justify an award of damages, including economic damages, the equitable relief of reinstatement or front pay in lieu of reinstatement, compensatory and noncompensatory damages, exemplary damages,

attorney fees, court costs, pre- and post-judgment interest, and any relief to which Windham may be entitled.

## VI. CONDITIONS PRECEDENT

33. On March 28, 2018, the EEOC issued a Notice of Right to Sue to Windham and her counsel. The Notice was received on March 30, 2018, and is attached as Exhibit A. Windham timely files suit within 90 days of receipt of that Notice.

## VII.  REQUEST FOR JURY TRIAL

34. Windham requests a trial by jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Windham requests that:

1. The Court assume jurisdiction of this cause and that Defendants be cited to appear;

2. The Court award damages to Plaintiff as specified above, including economic, compensatory and non-compensatory damages, as well as exemplary damages, for Defendants' violations of Title VII of the Civil Rights Act of 1964.

3. The Court award Plaintiff a reasonable attorney's fee, expert witness fees, and costs, as provided by law;

4. The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed; and

5. The Court award any such other relief allowed by law and as the Court may find proper.

Respectfully submitted,

*/s/ Kerry O'Brien*

**Kerry V. O'Brien**
Texas Bar No. 24038469
Board Certified in Labor & Employment Law by the TBLS



1011 Westlake Drive
Austin, Texas 78746
email: ko@obrienlawpc.com
phone: (512) 410-1960
fax: (512) 410-6171

**COUNSEL FOR PLAINTIFF WINDHAM**